Below is an Opinion of the Court.

*Elizabeth L. Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: | ) |
| | ) Bankruptcy Case No. |
| THEODORE LENALL COPELAND, | ) 08-45008-ELP |
| | ) |
| Debtor. | ) |
| _____ | ) |
| THEODORE L. COPELAND, | ) Adversary No. 10-04026-ELP |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| EMIEL A. KANDI and his marital | ) |
| community, DIVERSIFIED FINANCIAL, | ) |
| INC., JASON M. WONG, and JUANITA C. | ) |
| KANDI, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Debtor Theodore Copeland ("debtor") filed this adversary proceeding seeking a declaratory judgment, injunctive relief, and damages for willful violation of the automatic stay. Defendants are Emiel Kandi ("E. Kandi"), Diversified Financial, Inc. ("Diversified," which is E. Kandi's company), Juanita Kandi ("J. Kandi," who is E. Kandi's mother), and Jason

Page 1 - MEMORANDUM OPINION

Wong ("Wong," who is the attorney who represented the three other defendants in proceedings involving debtor). The court has stricken debtor's request for declaratory judgment and injunctive relief, leaving only the claims for willful violation of the automatic stay. Trial was held in this adversary proceeding on July 14, 2010. Closing argument was held on August 6, 2010.

As discussed below, the court concludes that defendants willfully violated the automatic stay, but the damages proven by debtor are far more limited than he sought.

FACTS

Based on the evidence and testimony presented at trial, I find the following facts. To the extent the testimony relating to certain facts was conflicting, the facts set out below reflect my determination of the credibility of the witnesses.

In 2005, debtor acquired the vendee's interest in real property ("the real property") under a land sale contract. Debtor failed to make all of the regular contract payments, and the vendor, Martha Sutherland, served on debtor a notice of intent to declare a forfeiture and cancel the contract if debtor did not cure the defaults by October 1, 2008.

Debtor sought financing to fund the cure amount. Through a friend, he contacted E. Kandi, the owner of Diversified. Debtor and E. Kandi discussed having E. Kandi's company make a loan to debtor so he could pay off the Sutherland land sale contract. Debtor believed that E. Kandi's company would make the loan in time for him to avoid the forfeiture. As October 1, 2008, drew nearer, however, debtor had difficulty getting in contact with E. Kandi. Unbeknownst to debtor, instead of making a loan

Page 2 - MEMORANDUM OPINION

to debtor to pay off the land sale contract, Diversified had acquired Sutherland's interest in the land sale contract on September 30, 2008. The funds Diversified used to purchase the contract from Sutherland came from a loan by J. Kandi to E. Kandi. To secure that loan, Diversified gave a trust deed on the real property to J. Kandi, which was recorded on October 1, 2008. Also that morning, Diversified recorded a declaration of forfeiture of debtor's rights in the property. The declaration of forfeiture was premature, as debtor had until the end of the day on October 1 to cure the default.

Because debtor had not obtained the loan from E. Kandi's company, and therefore did not have the funds to cure the default and avoid the forfeiture, he filed a chapter 13 bankruptcy petition in the afternoon of the same day, October 1, 2008. At that time, he did not know that Diversified had acquired Sutherland's interest in the real property or that it had filed the declaration of forfeiture earlier in the day.

Soon thereafter, debtor learned of the forfeiture. On October 6, 2008, debtor called E. Kandi on the telephone and told him about the bankruptcy filing. E. Kandi told debtor that Diversified had filed the declaration of forfeiture and that he was going to evict debtor.

On October 17, 2008, when Diversified had not cancelled the October 1 forfeiture, debtor through counsel filed a state court action against E. Kandi, J. Kandi, and Diversified for quiet title, to set aside the forfeiture, and for damages based on various theories. The complaint included further notice that debtor had filed bankruptcy on October 1, 2008, and provided the case number for the bankruptcy filing as well as a copy of the Notice of Bankruptcy Case Filing.

Page 3 -  MEMORANDUM OPINION

The complaint was served on E. Kandi on October 30, 2008, although he had been told about the lawsuit earlier in telephone conversations with Klaus Elliott, the process server who sought to serve the summons and complaint. Defendant Wong, representing the state court defendants, filed a notice of appearance in state court on October 30, 2008. It is unclear when J. Kandi was served. Although debtor's process server said he left the summons and complaint for J. Kandi at her abode on October 18, 2008, the evidence established that she had moved from that address before October 18. She testified, and I believe her, that she learned about the lawsuit on November 6 or 7, 2008, when E. Kandi told her about it.

The state court action proceeded, and on November 3, 2008, notwithstanding the bankruptcy, Wong, representing the state court defendants, filed their answer and alleged counterclaims against debtor for breach of contract, tortious interference with business relationships, quiet title, trespass, and injunctive relief.

On November 19, 2008, J. Kandi reconveyed the trust deed and Diversified set aside the declaration of forfeiture. The Reversal of Declaration [of] Forfeiture, signed by E. Kandi, indicated that forfeiture could be reinitiated at a later date.

On November 21, 2008, Wong filed a motion for relief from stay on behalf of Diversified, alleging both pre- and post-petition defaults and seeking relief to pursue contractual and statutory remedies.

The court denied the motion for relief from stay on December 30, 2008, because counsel for Diversified did not appear for the hearing. Diversified re-filed the motion for relief in January of 2009. The court

Page 4 - MEMORANDUM OPINION

1  granted the motion and entered an order on March 20, 2009,[1] granting

2  relief "so that [Diversified] may pursue its state remedies to enforce

3  its security interest in the Property and/or as to enforcement of the

4  deed of trust that is the subject of Diversified Financial's motion."

5      After relief from stay was granted, Wong on behalf of Diversified

6  filed a notice of intent to forfeit.  Debtor's state court counsel filed

7  a motion to restrain the forfeiture.  According to Wong's testimony,

8  there was an agreed-upon order restraining the forfeiture.

9      On July 14, 2009, Diversified filed a second declaration of

10 forfeiture.  Debtor filed a motion in bankruptcy court for clarification

11 of the March 20, 2009, order granting relief from stay.  The bankruptcy

12 court held a hearing on September 9, 2009, and on that same day entered

13 an order clarifying that the earlier relief from stay allowed only

14 litigation in state court over the amounts due under the contract.

15 Diversified did not pursue the forfeiture any further after entry of this

16 order, but it has not cancelled the July 2009 notice of intent to

17 forfeit.

18      Debtor filed this complaint in 2010.  The court has dismissed all

19 claims based on allegations of pre-petition conduct.

                              DISCUSSION

21     The filing of a bankruptcy petition operates as a stay of, among

22 other things, "the commencement or continuation" of a judicial proceeding

23 against the debtor on a pre-petition claim, and "any act to obtain

24 _____

25      [1]   The original order granting relief from stay, dated March 13,
26 2009, contained the wrong real property address.  The order was amended
   on March 20, 2009, to correct the error.

Page 5 -  MEMORANDUM OPINION

possession of property of the estate" or to "create, perfect, or enforce any lien against property of the estate," 11 U.S.C. § 362(a)(1), (3), (4). Bankruptcy Code § 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

Recovery for a willful stay violation requires a showing that the debtor sustained an injury from a violation that was willful. <u>In re Roman</u>, 283 B.R. 1, 7 (9th Cir. BAP 2002).

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

<u>In re Pace</u>, 67 F.3d 187, 191 (9th Cir. 1995) (quoting <u>Pinkstaff v. U.S.</u>, 974 F.2d 113, 115 (9th Cir. 1992)). Knowledge of the bankruptcy "is the legal equivalent of knowing of the stay[.]" <u>In re Zartun</u>, 30 B.R. 543, 546 (9th Cir. BAP 1983). <u>See also</u> <u>In re Dyer</u>, 322 F.3d 1178, 1191 (9th Cir. 2003). "[A] good faith belief that the stay is not being violated 'is not relevant to whether the act was "willful" or whether compensation must be awarded.'" <u>In re Peralta</u>, 317 B.R. 381, 389 (9th Cir. BAP 2004)(citation omitted).

1. <u>Did defendants' conduct violate the stay?</u>

Debtor alleged that various actions by one or more defendants violated the automatic stay: (1) failure to set aside the declaration of forfeiture and recording of the trust deed until November 19, 2008; (2) filing an answer and counterclaims in the state court litigation on November 3, 2008; and (3) filing notices of intent to forfeit in March

Page 6 – MEMORANDUM OPINION

and July 2009.

    A.   <u>Delay in setting aside the recording of the trust deed and declaration of forfeiture until November 19, 2008</u>

The moment debtor filed his bankruptcy petition on October 1, 2008, the automatic stay applied and protected him and property of the estate from claims of creditors. Because the declaration of forfeiture had been filed prematurely, its existence violated the automatic stay. The recorded deed of trust also violated the stay, to the extent it clouded title or otherwise impaired debtor's interest in the real property.

Failure to take reasonable steps to remedy an action that violates the stay in itself is a stay violation. <u>In re Ozenne</u>, 337 B.R. 214, 221 (9th Cir. BAP 2006). For example, waiting 23 days after learning of the debtor's bankruptcy case to dismiss a collection action against debtor was found to be a willful stay violation. <u>Eskanos & Adler, P.C. v. Leetien</u>, 309 F.3d 1210, 1212 (9th Cir. 2002).

J. Kandi reconveyed the trust deed on November 19, 2009, and Diversified set aside the declaration of forfeiture on the same day. Whether failure to reverse the actions before that date was unreasonable and therefore constituted a willful violation of the automatic stay depends on when defendants knew about the bankruptcy. I will address that issue with regard to each defendant separately.

    B.   <u>Filing an answer and counterclaims in state court</u>

The policy behind the automatic stay is to preserve the status quo, protecting "the estate from being depleted by creditors' lawsuits and seizures of property in order to provide the debtor breathing room to reorganize." <u>In re Palmdale Hills Prop., LLC</u>, 423 B.R. 655, 663 (9th

Page 7 - MEMORANDUM OPINION

Cir. BAP 2009). Neither the language of § 362 nor the policy behind the automatic stay requires the stay of actions brought by the debtor. <u>In re Merrick</u>, 175 B.R. 333, 336-337 (9th Cir. BAP 1994). Nor does the stay "prohibit a defendant in an action brought by a plaintiff/debtor from defending itself in that action." <u>In re Way</u>, 229 B.R. 11, 13 (9th Cir. BAP 1998).

> Defending oneself is one thing; asserting a counterclaim is another.
>
> A counterclaim is an independent cause of action . . . . As such, a counterclaim is an "action or proceeding against a debtor" and relief from the stay under § 362(a)(1) must be sought in order to continue its prosecution postpetition.

229 B.R. at 14.

Thus, although defendants' answer to debtor's state court complaint did not violate the stay, the filing of the counterclaims in state court did. The counterclaims sought affirmative relief for alleged breach of contract, tortious interference with business relationships, and trespass. Defendants sought to quiet title and to enjoin debtor from further use of the property. The filing of those counterclaims constituted the commencement or continuation of a judicial proceeding against debtor, and violated the automatic stay.

The counterclaims have not been dismissed. Defendants argue that the counterclaims are moot, now that the declaration of forfeiture has been reversed. Although the action for trespass, injunctive relief, and quiet title may be moot, outstanding claims for damages for breach of contract and tortious interference with business relationships are not. And even if claims are moot, they continue to be a threat to debtor until such time as they are dismissed.

Page 8 - MEMORANDUM OPINION

Diversified obtained relief from stay in March 2008.  But the bankruptcy court's order granting relief from stay cannot be read to grant relief to allow pursuit of the counterclaims.  The motion for relief did not mention the counterclaims, and Diversified did not ask for relief to pursue those counterclaims in state court.  In fact, Wong told the court at the hearing on the motion that he was not suing debtor in state court.  Transcript of February 19, 2009 hearing at 6:19-21 (Exh. I).

Filing the counterclaims violated the stay.  Defendants' failure to dismiss those counterclaims constitutes a continuing violation of the stay.

C. <u>Filing notices of intent to forfeit after the court granted relief from stay on March 20, 2009</u>

After a bankruptcy case is filed, a creditor violates the automatic stay by filing a notice of intent to forfeit with regard to estate property, unless the creditor has been granted relief from the automatic stay.  Both notices of forfeiture about which debtor complains were filed after the bankruptcy court granted relief from stay on March 20, 2009. Defendants argue that the stay had been lifted and so did not apply to their filing of the forfeiture notices.  Debtor argues that the bankruptcy court granted very limited relief from stay, which only allowed the parties to return to state court to litigate the contract dispute, but did not extend to any action to commence forfeiture for post-petition defaults.  Therefore, he argues, the notices of intent to forfeit went beyond the scope of the relief granted and violated the stay.

Case 10-04026-ELP   Doc 121   Filed 08/16/10   Ent. 08/16/10 14:47:40   Pg. 9 of 28

The March 20, 2009, order granting relief from stay provided:

> [T]he automatic stay is terminated as to Diversified Financial, its successors and assigns, so that it may pursue its state remedies to enforce its security interest in the Property and/or as to enforcement of the deed of trust that is the subject of Diversified Financial's motion. Creditor, its successors and assigns, may at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

Order Granting Relief from Stay by Diversified Financial, Inc. at 1-2 (Exh. K).

The judge signed the proposed order that was submitted by Wong on behalf of Diversified, with some changes, and the language tracked the request for relief in the motion. However, at the hearings on the motion on February 19, 2009, and March 12, 2009, the court made it clear that any relief granted would simply allow the parties to return to state court and litigate the contract issues there. E.g., Transcript of February 19, 2009, hearing at 9:5-8, 12-14; 12:4-10; 13:18-21 (Exh. I);[2] Transcript of March 12, 2009, hearing at 5:6-8, 17-18; 6:1-6 (Exh. J). Wong failed to point out to the judge that the language of the proposed order granting relief was broader than the relief that the court said it

---

[2] For example, at the February 19, 2009, hearing, the court said, "So I can lift the stay, as Mr. Wong is asking, let everything go up to state court, and let you fight the issue of your contract dispute in state court." Transcript of February 19, 2009, hearing at 9:12-14 (Exh. I). At the March 12, 2009, hearing, the court repeated that the relief to be granted was intended to be limited. The judge said, "So I'm going to grant just simple relief from stay that just allows you to go back to state court. . . . All I'm doing is granting you relief from stay to go back." Transcript of March 12, 2009, hearing at 5:6-8; 17-18 (Exh. J). The court continued: "But all I'm doing is granting relief from the stay so that you can litigate the issue in state court. That's all that's taking place today." Id. at 6:1-4.

Page 10 - MEMORANDUM OPINION

1 was allowing.

2     The scope of the intended relief from stay was clarified at the

3 September 9, 2009, hearing. On debtor's motion, the court entered an

4 order that clarified the limited scope of the relief granted. That

5 order, entered on September 9, 2009, provided:

> Creditor Diversified Financial received relief from stay on March 12, 2009 to pursue post-petition defaults and to pursue litigation in Pierce County Superior Court. Creditor Diversified Financial may not seek forfeiture for pre-petition defaults. Any attempt to seek future forfeiture for post-petition defaults must be approved by the Bankruptcy Court. All pre-petition defaults, to include payments to Diversified, Pierce County tax assessor, and all other claims are subject to the jurisdiction of the Bankruptcy Court. To the extent that Pierce County Superior Court has ordered payment of pre-petition defaults, the court [retains] jurisdiction over pre-petition debts subject to the Chapter 13 payment plan.

12 Order Granting Motion to Clarify Amended Order Granting Relief from Stay

13 at 2 (Exh. N).

14     This order and the discussion at the September 9, 2009, hearing,

15 _e.g._, Transcript of September 9, 2009, hearing at 7:21-23 (Exh. M),

16 clarified that all the court was allowing was for the parties to return

17 to state court and litigate the contract dispute there. The order

18 clarified that Diversified would have to obtain relief from stay to

19 commence or pursue forfeiture for post-petition defaults.

20     Given the limited scope of the relief granted, as clarified in

21 September, the March and July 2009 notices of intent to forfeit the

22 property violated the automatic stay by pursuing forfeiture, which was

23 beyond the scope of the relief granted.

24     The March notice of intent to forfeit has been cancelled or

25 withdrawn, and has no more effect. The July notice of intent to forfeit

26 has been enjoined by the state court but it has not been cancelled or

Page 11 - MEMORANDUM OPINION

withdrawn. The threat of forfeiture based on the enjoined notice of intent to forfeit is an action to obtain possession of property of the estate, which is stayed by § 362(a)(3). The failure to cancel the July notice of intent to forfeit after entry of the September 9, 2009, order clarifying the scope of the relief from stay is a continuing violation of the stay.

2. <u>Were the violations willful?</u>

A creditor's conduct that violates the automatic stay is willful if the creditor knew about the bankruptcy, which constitutes knowledge of the automatic stay, and if the creditor's conduct was willful. Because the dates each of the defendants learned about the bankruptcy are pertinent to whether some of the stay violations were willful, I will address separately when defendants each learned about the bankruptcy.

A. <u>Juanita Kandi</u>

There are two stay violations involving J. Kandi: the failure to reconvey the trust deed until November 19, 2008, and the filing and continued existence of her counterclaim in state court. J. Kandi's defense is that she did not know about debtor's bankruptcy at the pertinent time, so she could not have willfully violated the stay.

There is no evidence that J. Kandi had notice of the bankruptcy at any time before debtor sued her in state court. The state court complaint included an allegation that debtor had filed bankruptcy on October 1, 2008, thereby giving notice of the bankruptcy.

J. Kandi testified that she learned about the lawsuit on November 6 or 7, when E. Kandi told her about it.

Debtor argues that J. Kandi knew about the lawsuit, and therefore

Page 12 - MEMORANDUM OPINION

the bankruptcy filing referenced in the complaint, on October 18, 2008. He relies solely on the Declaration of Klaus Elliott. Elliott says that he tried to serve the summons and complaint on E. Kandi at a Vista Place West address on October 18. When no one was home, he telephoned J. Kandi "who indicated to me that she did not want to have anything to do with this matter." That testimony does not establish that J. Kandi knew on October 18 that she was a defendant in the lawsuit or knew the content of the complaint, in particular the information about the bankruptcy filing.

I believe J. Kandi's testimony that she did not find out about the state court complaint until November 6 or 7, which was after the counterclaim had been filed on her behalf on November 3 and only 12 or 13 days before she reconveyed the trust deed on November 19.

J. Kandi argues that the counterclaims in state court are not her claims. First, she argues that none of the counterclaims assert claims by her against debtor. Second, she argues that she did not even know about the state court action on November 3, 2008, when the counterclaims were filed, and so the counterclaims could not have been filed on her behalf.

The pleading that asserts the counterclaims is not artfully written. It names J. Kandi and E. Kandi as the two defendants asserting the counterclaims. It is clear from the allegations that the breach of contract, trespass, intentional interference with business relationships, and injunctive relief claims do not relate to J. Kandi. The claim for quiet title, however, does relate to her; a judgment quieting title would benefit her. There was no reason to name J. Kandi as a defendant asserting a counterclaim if none of the counterclaims affect her. I

Page 13 - MEMORANDUM OPINION

conclude that the quiet title counterclaim was filed on behalf of J. Kandi.

The fact that Wong filed a counterclaim against debtor on J. Kandi's behalf on November 3 raises the question of how that could have been done if J. Kandi did not yet know that debtor had sued her in state court. J. Kandi testified that she did not know about the lawsuit on that date, and had not hired Wong to represent her. Wong testified that he did not discuss the lawsuit with J. Kandi before he filed the answer and counterclaim on her behalf, and that he did not have any specific agreement to represent her in this matter. He testified that he had represented her in the past, and thought he needed to file the answer and counterclaim quickly to preserve her rights in that litigation, despite not having spoken to her about the lawsuit.

I believe the testimony and find that J. Kandi did not know about the state court litigation or the bankruptcy before Wong filed the counterclaim on her behalf on November 3.

Therefore, J. Kandi did not willfully violate the stay by filing the counterclaim on November 3, because as of that date she did not know about the state court action or the bankruptcy.

Failure to take reasonable steps to remedy an action that violates the stay in itself is a stay violation. In re Ozenne, 337 B.R. 214, 221 (9th Cir. BAP 2006). Thus, after J. Kandi learned about the state court action and the existence of the counterclaim, she had an obligation to remedy the stay violation by dismissing her counterclaim. She argues that the counterclaim is moot, but it continues to be a threat to debtor until it is dismissed. She must dismiss the counterclaim to remedy the

Page 14 - MEMORANDUM OPINION

violation of the stay.

Debtor also argues that J. Kandi's failure to reconvey the trust deed until November 19, 2008, was a willful stay violation. She reconveyed the trust deed less than two weeks after she learned about the bankruptcy. I find that her action to remedy the stay violation by releasing the trust deed was taken within a reasonable time after she learned about the bankruptcy. She relied on her son to take care of the reconveyance for her, which he did. Thus, J. Kandi did not willfully violate the stay by failing to release the trust deed before November 19.

B. <u>E. Kandi and Diversified</u>

Debtor alleges that E. Kandi and Diversified willfully violated the stay by (1) delaying the cancellation of the October 1, 2008, declaration of forfeiture until November 19, 2008; (2) filing counterclaims against him in state court; and (3) filing notices of intent to forfeit in March and July 2009.

Diversified acted through E. Kandi, and his dealings with debtor were on behalf of the entity. Therefore, the actions of E. Kandi were also the actions of Diversified.

Debtor testified that he told E. Kandi in a telephone conversation on October 6, 2008, that he had filed bankruptcy. E. Kandi recalls having that telephone conversation, and testified that during that conversation he told debtor that he was going to evict him. E. Kandi did not deny that debtor told him of the bankruptcy filing in that conversation, although he testified that he does not specifically recall being told of it.

In light of E. Kandi's admission that he spoke to debtor on the

Page 15 - MEMORANDUM OPINION

telephone on October 6, and that he told debtor he was going to evict him, I find debtor's testimony convincing that he told E. Kandi about the bankruptcy during that conversation. The purpose of debtor's bankruptcy filing was to save his house; it is logical that he would have told E. Kandi about the bankruptcy when they discussed the forfeiture on October 6.

Notice of the bankruptcy may be given "by any means and in any manner[,]" including orally. <u>In re Stucka</u>, 77 B.R. 777, 781 (Bankr. C.D. Cal. 1987). Therefore, the October 6 conversation was sufficient to put E. Kandi and Diversified on notice that debtor had filed bankruptcy.

E. Kandi and Diversified argue that they did not know that the declaration of forfeiture had been filed too early until they read the allegations of the state court complaint after it was served on October 30. However, E. Kandi testified that his business is to obtain interests in homes that are nearing foreclosure or forfeiture, and then completing the forfeiture or foreclosure. In light of his self-expressed expertise in the business and his testimony demonstrating familiarity with the pertinent law, I do not find his testimony believable that, after he spoke to debtor on October 6, he did not know that the declaration of forfeiture had been filed a day early and needed to be set aside.

In any event, even "a good faith belief that the stay is not being violated 'is not relevant to whether the act was "willful" or whether compensation must be awarded.'" <u>In re Peralta</u>, 317 B.R. 381, 389 (9th Cir. BAP 2004)(citation omitted).

E. Kandi and Diversified waited until November 19, 2008, nearly a month and a half after learning of the bankruptcy filing, to cancel the

Page 16 - MEMORANDUM OPINION

declaration of forfeiture.  That delay was not reasonable and was a willful violation of the stay.  Even if I were to give them the benefit of the doubt and conclude that they did not know about the bankruptcy until the complaint was served on October 30, a three-week delay is still unreasonable and therefore a willful violation, in light of their obligation to remedy violations of the stay promptly.

The filing of the counterclaims on November 3 was also a willful violation of the automatic stay, because E. Kandi knew about the bankruptcy filing and intentionally filed the counterclaims.

Those counterclaims have not been dismissed, which is a continuing violation of the stay.  Defendants argue that the violation is not willful, because the bankruptcy court's September 9, 2009, clarification order did not order them to dismiss those counterclaims.  But it is not clear that the bankruptcy court even knew about the counterclaims at any time in the relief-from-stay process.

Although defendants have not taken any action to pursue the counterclaims since they were filed, including after the September 9 clarification, the existence of the counterclaims continues to violate the stay.  To remedy that continuing violation, defendants must dismiss those counterclaims within 14 days of the date of this ruling.

As for the two notices of intent to forfeit that were filed after relief from stay was granted in March 2009, I conclude that, although the notices violated the automatic stay, the violations were not willful. The language of the March 20, 2009, order granting relief from stay was broad and could reasonably be interpreted to allow pursuit of state remedies including forfeiture.  Because defendants filed the notices of

Page 17 - MEMORANDUM OPINION

intent to forfeit in reasonable reliance on the language of the relief
from stay order, those actions were not willful violations of the stay.

As with the counterclaims, however, the existence of the July 2009
notice of intent to forfeit (which is currently enjoined by the state
court) constitutes a continuing violation of the automatic stay. Because
the bankruptcy court did not order defendants to cancel or withdraw the
notice of intent to forfeit when it clarified the relief from stay in
September 2009, and defendants are restrained by the state court from
pursuing the notice of intent to forfeit, defendants' failure to cancel
or withdraw after September was not a willful violation.

However, E. Kandi made it very clear in his testimony at trial that,
if the state court lifts its injunction, he fully intends to pursue
forfeiture, which he says he can do on 10 days' notice. Given E. Kandi's
attitude and demeanor at the trial, I am not persuaded by his later
testimony, given after he had spoken with his counsel, that he knew he
would have to obtain relief from stay before moving forward with the
forfeiture. E. Kandi's attitude was that he had a right to forfeiture on
10 days' notice, and I do not find his assurance that he would obtain
relief from stay before taking further action on the July 2009 notice of
intent to forfeit sufficient.

The pending notice of intent to forfeit remains a threat to debtor's
interest in the real property. Contrary to defendants' argument, this
notice does not simply maintain the status quo. If for some reason
debtor were not in bankruptcy when the state court terminated the
injunction restraining the forfeiture, according to E. Kandi, state law
allows him to declare a forfeiture on 10 days' notice, rather than the 90

Page 18 - MEMORANDUM OPINION

days' notice that would apply if he had to start the process over. Thus, the failure to cancel the notice of intent to forfeit, which was filed in violation of the automatic stay, does not simply maintain the status quo but instead gives E. Kandi and Diversified an advantage that it obtained in violation of the stay.

Therefore, because the existence of the notice of intent to forfeit continues to threaten debtor's interest in the real property, defendants E. Kandi and Diversified must cancel the July 2009 notice of intent to forfeit within 14 days of the date of this ruling.

C. <u>Jason Wong</u>

Debtor claims that attorney Wong, through his representation of the other defendants, willfully violated the stay by participating in defending the state court lawsuit filed by debtor in October 2008, filing the counterclaims on behalf of his clients, and filing the notices of forfeiture in March and July 2009.

Wong filed a notice of appearance in state court on October 30, 2008. Thus, he had to have known about the state court complaint, including the allegation about debtor's bankruptcy filing, by that date.

Because Wong knew about debtor's bankruptcy before he filed the counterclaims on behalf of his clients, he willfully violated the stay by filing the counterclaims. Although the bankruptcy court later granted relief from stay in the March 20, 2008, order, that relief did not allow the filing of counterclaims for affirmative relief, nor did that order grant relief retroactively to annul the stay violation that occurred when Wong filed the counterclaims without having first obtained relief from the stay.

Page 19 - MEMORANDUM OPINION

Although the counterclaims have not been dismissed and continue to constitute a violation of the automatic stay, Wong testified that he no longer represents defendants in the state court action.  Therefore he cannot take any action on their behalf in the state court litigation.  I conclude that he is not responsible for the continuing violation that exists by virtue of the failure to dismiss the counterclaims.

As for the notices of forfeiture, it is not clear whether Wong filed the first post-petition notice.  If he did, I have explained that the stay violation resulting from the filing was not willful because it was done in reasonable reliance on the court's relief from stay order.

E. Kandi testified that he filed the second notice of intent to forfeit without Wong's assistance.  Wong therefore is not responsible for any violation arising out of the continued existence of that second notice of intent to forfeit.

3.  <u>What are the damages from the willful violations?</u>

Defendants argue that debtor has not established any damages resulting from any willful violation of the stay.  Debtor seeks damages for (1) emotional distress; (2) attorney fees incurred in the state court action; and (3) punitive damages.

A.  <u>Emotional distress damages</u>

Emotional distress damages may be awarded for violation of the automatic stay under § 362(k).  <u>In re Dawson</u>, 390 F.3d 1139 (9th Cir. 2004). "[T]o be entitled to damages for emotional distress under § 362([k]), an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as

Page 20 - MEMORANDUM OPINION

distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." Id. at 1149. Emotional distress damages are recoverable even in the absence of economic injuries. Dawson, 390 F.3d at 1146-1149.

"Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." Id. at 1149. Emotional distress damages may be established in several ways: corroborating medical evidence; non-expert testimony about manifestations of mental anguish; or circumstances that make it obvious that a reasonable person would suffer significant emotional harm. Id. at 1149-1150.

Debtor established that defendants' conduct caused him emotional distress. Debtor testified that he cannot sleep and spends all of his time working on saving his house, because defendants continue to take actions to take debtor's house, despite the bankruptcy stay. He described a fear, based on his interaction with defendants, that the bankruptcy stay will not protect his house from forfeiture.

Debtor is a person of limited means. He is self employed and earns his living repairing copy machines. He filed his bankruptcy case without a lawyer and has prosecuted this adversary proceeding pro se. When the bankruptcy filing was insufficient to cause E. Kandi and Diversified to stop the forfeiture, and E. Kandi had threatened debtor with eviction, debtor was so frightened that he borrowed money from his mother to retain state court counsel to help him save his house. Despite debtor's chapter 13 case, the threat of forfeiture remains.

Debtor's fiance testified that debtor's personality has changed due

Page 21 - MEMORANDUM OPINION

to his distress over dealing with E. Kandi and Diversified in trying to keep his house from forfeiture. She testified that he does not sleep, that their personal relationship has become strained, debtor is very tense, and he is no longer working as much as he did before these events occurred. According to her, debtor is stressed because he does not feel that he is being protected by the bankruptcy stay the way he is supposed to be protected.

Having heard debtor's and his fiance's testimony about the emotional distress defendants' conduct has caused and how it has changed his quality of life and having observed their demeanor, having considered that E. Kandi threatened to evict debtor even after being aware of debtor's bankruptcy, and having considered that it is debtor's residence that is at issue, I am convinced that debtor has suffered significant emotional harm from E. Kandi's and Diversified's conduct between October 1, 2008, and March 20, 2009, and from Wong's conduct between November 3, 2008 and March 20, 2009. This is distress that goes beyond emotional distress caused by filing bankruptcy. Considering the conduct of defendants in doggedly pursuing forfeiture from the date of bankruptcy forward, the fact that debtor has suffered significant emotional distress is reasonable. The continued threat of forfeiture of a home in which debtor believes he has significant equity, along with debtor's understandable fear that the automatic stay does not protect him, clearly has caused debtor significant emotional harm.

I conclude that debtor is entitled to emotional distress damages totaling $10,000 for the willful stay violations, all of which shall be payable by E. Kandi and Diversified, and $5,000 of which shall also be

Page 22 - MEMORANDUM OPINION

payable by Wong. Debtor's distress is significant, and was caused by the conduct of E. Kandi and Diversified in delaying the cancellation of the declaration of forfeiture in October and November 2008, and by E. Kandi, Diversified, and Wong in filing and not dismissing the counterclaims, including the counterclaim for trespass.

Although E. Kandi's and Diversified's filing of the March and July 2009 notices of intent to forfeit were violations of the stay, they were not willful violations because the actions were taken in reasonable reliance on the bankruptcy court's March 20, 2009, order granting relief from stay, and it was only after the court clarified the order granting relief from stay in September 2009 that it became clear that the court did not intend to allow stay relief to pursue forfeiture. Thus, any emotional distress that was caused by those notices is not recoverable as damages in this case.

I find that the willful violation by J. Kandi, which was her failure to dismiss her counterclaim, did not cause any emotional distress. Debtor never dealt with her and her involvement in the transaction was peripheral. Although she must dismiss her counterclaim to avoid willfully violating the stay going forward, I do not find any emotional harm caused by her failure to dismiss her moot counterclaim.

B. <u>Attorney fees</u>

"[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1). "Actual damages" are amounts "'awarded . . . to compensate for a proven injury or loss; damages that repay actual

Page 23 – MEMORANDUM OPINION

losses.'" Sternberg v. Johnston, 595 F.3d 937, 947 (9th Cir. 2010)
(quoting Black's Law Dictionary 416 (8th ed. 2004)) (omission in
original).

Attorney fees incurred in enforcing the automatic stay and remedying
the stay violation are "actual damages" and therefore recoverable.
§ 362(k); Sternberg, 595 F.3d at 945-948.  Attorney fees incurred in
seeking damages for violation of the stay are not recoverable.  Id.

In determining the amount of attorney fees that should be awarded
for violation of the stay, the court looks at (1) whether the expenses or
costs resulted from the stay violation, and (2) whether those expenses or
costs were reasonable or could have been mitigated.  In re Roman, 283
B.R. 1, 12 (9th Cir. BAP 2002).

Debtor seeks $38,647.66 in attorney fees incurred in his state court
litigation with defendants.  The state court action includes claims
beyond claims to avoid the consequences of automatic stay violations and
to enforce the automatic stay.  In particular, the state court litigation
includes claims for fraud, negligent misrepresentation, violation of
consumer protection laws, violation of lending laws, and fraudulent
conveyance.  Debtor is entitled to attorney fees as damages for willful
violation of the automatic stay only for fees relating to the October 1,
2008, forfeiture.  Fees incurred in pursuing the other claims in the
state court action are not allowable, as they are not related to the
willful stay violations.

Debtor incurred substantial attorney fees in state court as a result
of the two notices of intent to forfeit that were filed in March and July
2009.  As I explained above, those notices violated the automatic stay,

Page 24 - MEMORANDUM OPINION

but the violations were not willful.  Therefore, debtor is not entitled
to recover his attorney fees incurred in disputing Diversified's March
and July 2009 notices of intent to forfeit.

I have reviewed debtor's entire itemization of attorney fees and
costs that he claims as damages.  I find no attorney fees or costs
associated with the filing of the counterclaims.  Debtor has never
answered the counterclaims, and there does not appear to have been any
litigation or other legal work performed related to those counterclaims.
Therefore, there are no attorney fee damages for willful violation of the
stay arising from the filing or continued existence of the counterclaims.

There were attorney fees and costs resulting from E. Kandi's and
Diversified's delay in cancelling the October 1, 2008, declaration of
forfeiture.  Between October 7, 2008, and October 24, 2008, debtor
incurred $3,003 in attorney fees and $256.20 in costs in initiating the
state court action.  Between October 30, 2008 (the first date on the next
attorney fee invoice), and November 18, 2008 (the day before the
declaration of forfeiture was set aside), debtor incurred $3,144.75 in
attorney fees, $70.00 in service fees, $5.00 for parking for a November
14, 2008, hearing, and $24.24 in finance charges.  This totals $6,533.19.

The attorney work itemized for November 19, 2008, indicates that
counsel knew by that time that the declaration of forfeiture had been set
aside.  Therefore, fees for the work on November 19 are not part of the
damages for the violation of the automatic stay.

The state court complaint contained a number of claims besides the
claims relating to setting aside the declaration of forfeiture.  The
detail contained in the attorney invoices, however, indicates that the

Page 25 - MEMORANDUM OPINION

bulk of the work done up to November 18, 2008, related to the attempt to get the declaration of forfeiture set aside. I conclude that debtor is entitled to 75 percent of his fees and costs in the state court litigation up to and including fees charged on November 18, 2008, for a total of $4,900.

Defendants argue that debtor should have mitigated his damages by attempting to get them to set aside the declaration of forfeiture without filing the state court lawsuit. In light of the attitude of E. Kandi in his testimony at trial, which demonstrated a lack of concern for complying with the bankruptcy stay absent official notice of the bankruptcy filing as well as his view that he need do nothing while investigating the claim that the October 1, 2008, declaration of forfeiture was filed prematurely and therefore invalid, I am not convinced that there would have been a meaningful savings if debtor's attorney would have made a pre-litigation demand to set aside the declaration of forfeiture. The state court action, or a motion in bankruptcy court, was necessary to get E. Kandi to remedy the stay violation.

C. Punitive damages

Punitive damages will be awarded if a defendant's conduct was malicious, wanton or oppressive, or if the violator engaged in "egregious, intentional misconduct." In re Stinson, 295 B.R. 109, 122 (9th Cir. BAP 2003), aff'd in part, rev'd in part on other grounds, 128 Fed.Appx. 30 (9th Cir. 2005)(unpublished); In re Ramirez, 183 B.R. 583, 590 (9th Cir. BAP 1995).

Defendants' willful violations of the stay were not malicious,

Page 26 - MEMORANDUM OPINION

wanton, or oppressive. Although they pursued forfeiture of the real property until debtor filed the state court action to stop them, they cancelled the declaration of forfeiture before they were ordered to do so. Although they have not dismissed the counterclaims or cancelled the July 2009 notice of intent to forfeit, they have maintained the status quo since the bankruptcy court clarified the scope of the order granting relief from stay. The bankruptcy court did not order cancellation of the notice of intent to forfeit or dismissal of the counterclaims.

Because defendants' conduct was not malicious, wanton, or oppressive, I will not award punitive damages.

CONCLUSION

Defendants violated the automatic stay. Debtor is entitled to $10,000 in damages for emotional distress caused by the willful stay violations. Debtor is also entitled to $4,900 in damages from E. Kandi and Diversified for the attorney fees incurred in obtaining cancellation of the declaration of forfeiture. There were no proven damages from J. Kandi's willful violation in failing to cause her counterclaim to be dismissed.

I conclude, however, that the continued pendency of the counterclaims in state court and the pending notice of intent to forfeit constitute an on-going violation of the stay that must be remedied immediately. Defendants E. Kandi, Diversified, and J. Kandi must dismiss the state court counterclaims, and E. Kandi and Diversified must cancel the notice of intent to forfeit within 14 days of the date of this

////

////

Page 27 - MEMORANDUM OPINION

ruling.  Their failure to do so will constitute a failure to obey a court order, subject to sanctions for contempt.

The judgment will be entered contemporaneously with the issuing of this Memorandum Opinion.

###

cc:  Thomas P. Quinlan
     Jeffrey Kestle
     Theodore L. Copeland